## NEWARK TRUST COMPANY, A CORPORATION, v. JANE A. CURTISS AND SIDNEY S. SMITH.

Argued November 6, 1913—Decided February 24, 1914.

A married woman who executes a note to make good a depletion of her account in a bank, resulting from the payment by said bank of a previous note of which she was accommodation maker, and which was made payable by her at that bank, obtains a benefit for her separate estate within the meaning of section 5 of the Married Woman's act, and is consequently liable on such new note, although said new note was originally intended by her in renewal and reduction of the accommodation note.

On defendants' rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER and KALISCH.

For the plaintiff, *Howard S. Kinney.*

For the defendant Jane A. Curtiss, *Terry Parker.*

The opinion of the court was delivered by

PARKER, J. The suit was upon a promissory note for $1,-000, made by the defendant Mrs. Curtiss, a married woman, and endorsed by the defendant Smith. The case was tried with a jury at the Essex Circuit and the trial judge directed a verdict against both defendants. The defendant Smith does not question the correctness of this action, so far as he was concerned; but the complaint of Mrs. Curtiss is of legal errors at the trial. Her exceptions were reserved by the trial judge, but, on the argument when this matter was called to the attention of her counsel as foreclosing a consideration of such errors on a rule to show cause (*Ashhurst* v. *Atlantic Coast Railroad Co.,* 37 *Vroom* 16), he expressly waived the reservation of exceptions and the whole case was thereupon argued.

The defence of Mrs. Curtiss was that she was a married woman and was merely an accommodation maker and therefore within the protection of the Married Woman's act. *Comp. Stat., p.* 3226, § 5. The reply was that she received a benefit for her separate estate by reason of her signature to the note, and so came within the exception to the proviso which exempts a married woman from liability.

The controlling question is whether there was anything to be left to the jury with respect to the question whether Mrs. Curtiss obtained, in the language of the statute, "directly or indirectly, any money, property or other thing of value for her own use, or for the use, benefit or advantage of her separate estate." It appeared very plainly that the note in question was intimately connected with and followed a series of notes with respect to which it was reasonably plain that Mrs. Curtiss was an accommodation maker or endorser. The evidence showed that her husband, and to some extent herself, were interested in a corporation which got into difficulties and needed money; and her husband persuaded her to lend her name on a promissory note to raise money for the benefit of this corporation. These notes were renewed from time to time, with reductions, and finally the amount borrowed had diminished to $1,400, represented by a note of that amount, which came due on May 20th, and which the parties wished to have renewed at the bank. On the morning of that day Mr. Curtiss, the defendant's husband, saw Smith, the endorser, and sent him to the bank with the discount charges, besides a check of $100 and a new note of $1,300; but the plaintiff's cashier, or treasurer, refused to renew for $1,300, and said it would be necessary to reduce to $1,000. So, Smith went back to Curtiss and reported accordingly. Curtiss did not go to see the cashier and tell him that his requirement would be met, nor did Smith do so; but instead of this Mr. Curtiss went home to see his wife and induce her to advance $400 in cash or check and sign the new note for $1,000. As Mrs. Curtiss lived at some distance from the business district, by the time Curtiss got back with his new note and check, the plaintiff trust company, having heard nothing as to what

would be done, had put the note in regular course of collection through its messengers. The note was payable at the Federal Trust Company where the defendant Mrs. Curtiss had an account, which was good for the amount, and where, during the day and before Curtiss got back, it was presented; and her account being found good. the note was accepted and certified in accordance with the convenience and custom of bankers instead of being paid in cash. This amounted to a substitution of the Federal Trust Company as the debtor and the release of Mrs. Curtiss. *Times Square Automobile Co. v. Rutherford National Bank,* 48 *Vroom* 649. No instructions appeared to have been given to the Federal Trust Company by Mrs. Curtiss with regard to the payment of this note, but as it was payable at that institution, of course, it is perfectly plain that the Federal Trust Company acted only as it properly might do and should have done under the circumstances. At this juncture, therefore, and when Mr. Curtiss got back with the new note for negotiation at the office of the plaintiff, the situation was that the previous series of notes ending with the $1,400 note had been paid off by the acceptance and certification of that note. It was true that Mrs. Curtiss was $1,400 worse off in her bank account; but she had, as a legal result of what she had done and authorized others to do, paid off an accommodation debt which she was perhaps not bound to pay, but which, in view of the circumstances, she must be held to have wished to pay. So that when her husband offered the new note for $1,000, with Smith's endorsement, it was in legal effect a request by Smith for a new loan on a note whereof Mrs. Curtiss was maker and- he was endorser. When Mr. Curtiss arrived at the plaintiff's office with the note, he was told that the plaintiff was not in a position to surrender the old note because it had been collected; and therefore not wishing to have his wife's account depleted by $1,400, or more than the $400, which she had agreed to contribute, he went on and offered the new note for a thousand dollars for discount upon Smith's endorsement, and as soon as it was negotiated, Smith gave his check to Mrs. Curtiss for $1,000, and Mrs. Curtiss deposited this check in the Federal Trust Company

and thus used the proceeds of this $1,000 note in suit to make good to that extent the depletion of her account by the payment of the former note. There are some other facts in the case, but they are comparatively immaterial, and the above are sufficient to show clearly the nature of the transactions.

We think it is perfectly plain that Mrs. Curtiss obtained a benefit for her separate estate. If the $1,000 note had been turned in to plaintiff and accepted by it before the $1,400 note was sent over to the Federal Trust Company and paid, the case would have been different; for the Newark Trust Company, plaintiff, would have simply exchanged the $1,400 note that was due for a new $1,000 note and $400 in cash, the $1,000 note being subject to precisely the same defence that the previous note had been subject to; thus Mrs. Curtiss would have remained as an accommodation maker. A similar situation would have been presented if she had stopped payment at the Federal Trust Company; but when she permitted the Federal Trust Company to pay the note signed by her and made payable by her at that bank, she must be considered as having paid it voluntarily, and if she chose afterwards to negotiate a new note in order to raise money to restore her bank balance, she was raising it for her own benefit.

This disposes of the main question involved. The other points relate to rulings on evidence. First, it is said that the court should not have admitted evidence to show Mrs. Curtiss' stock interest in the corporation. This was perhaps immaterial, but certainly harmless. If she had no stock interest, she was purely an accommodation maker in the first instance. If she did have a stock interest, the plaintiff was perhaps entitled to the evidence to show that stock interest was, as a part of her separate estate, indirectly benefited by the proceeds of the loan; but, in any case, the direction of a verdict can and should properly be rested on the main ground above given, so that the admission of the evidence does not affect the case.

The other point argued is the exclusion of evidence to show the series of note transactions leading up to the note in question. This exclusion was erroneous, but it was fully cured by

the court afterwards going into the matter at length and permitting the whole history of the notes to be brought out, and consequently there was no harm in the original ruling.

We conclude that the rule to show cause should be discharged.